*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

**UNITED STATES**
Appellee

**v.**

**Cameron M. MAYS, Private**
United States Army, Appellant

**No. 23-0001**
Crim. App. No. 20200623

Argued April 18, 2023—Decided May 18, 2023

Military Judges: Theresa L. Raymond (arraignment)
and William C. Ramsey (trial)

For Appellant: *Captain Andrew R. Britt* (argued);
*Major Bryan A. Osterhage* and *Jonathan F. Potter*,
Esq. (on brief).

For Appellee: *Lieutenant Colonel Matthew T. Grady*
(argued); *Colonel Christopher B. Burgess, Lieutenant Colonel Jacqueline J. DeGaine*, and *Major Kalin P. Schlueter* (on brief).

Judge MAGGS delivered the opinion of the Court, in
which Chief Judge OHLSON, Judge SPARKS,
Judge HARDY, and Judge JOHNSON joined.

———————————

Judge MAGGS delivered the opinion of the Court.

A military judge sitting as a general court-martial found Appellant guilty of numerous offenses.[1] Before this Court, Appellant contests the legal sufficiency of the evidence for finding him guilty, contrary to his pleas, of two specifications of attempted indecent viewing in violation of Article 80, UCMJ. As defined in Article 120c(a)(1), UCMJ, 10 U.S.C. § 920c(a)(1) (2018), the offense of indecent viewing consists of "knowingly and wrongfully view[ing] the private area of another person, without that other person's consent and under circumstances in which that other person has a reasonable expectation of privacy." Appellant contends that he cannot be guilty of attempted indecent viewing because there was no evidence that he attempted to view the private areas of the named victims. He asserts that even drawing every reasonable inference in the Government's favor, the evidence at most shows that he attempted to view *visual images* of their private areas as produced by his cell phone camera and that merely viewing visual images does not violate Article 120c(a)(1), UCMJ. The United States Army Court of Criminal Appeals (ACCA) rejected this argument and concluded that the evidence was legally sufficient. *United States v. Mays*, No.

---

[1] Consistent with his pleas, the military judge found Appellant guilty of one specification of false official statement, one specification of wrongful use of a controlled substance, one specification of wrongful possession of a controlled substance, one specification of wrongful introduction of a controlled substance, one specification of larceny, and one specification of assault upon a person in the execution of law enforcement duties, in violation of Articles 107, 112a, 121, 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 912a, 921, 928 (2018). The military judge also found Appellant guilty, contrary to his pleas, of two specifications of attempted indecent viewing, one specification of insubordinate conduct toward a noncommissioned officer, one specification of sexual assault, one specification of assault upon a commissioned officer, and one specification of assault upon a noncommissioned officer, in violation of Articles 80, 91, and 120, UCMJ, 10 U.S.C. §§ 880, 891, 920 (2018), and Article 128, UCMJ.

ARMY 20200623, 2022 CCA LEXIS 525, at *8, 2022 WL 4232596, at *3 (A. Ct. Crim. App. Sept. 7, 2022) (summary disposition) (unpublished). For the reasons explained below, we affirm the decision of the ACCA.

## I. Background

Specification 1 of Charge III alleged a violation of Article 80, UCMJ, in that Appellant "did, at or near Kandahar, Afghanistan, on or about 8 November 2018, attempt to wrongfully and knowingly view the private area of Specialist (E-4) [J.S.], without his consent, and under circumstances in which Specialist (E-4) [J.S.] had a reasonable expectation of privacy." Providing relevant evidence for this specification, a witness testified at trial that, on November 8, 2018, he observed Appellant standing next to a shower stall in which Specialist J.S. was showering. The witness further testified that he saw Appellant holding a cell phone over the shower stall wall. Appellant fled the bathroom area when the witness confronted him.

Specification 2 of Charge III alleged a violation of Article 80, UCMJ, in that Appellant "did, at or near Kandahar, Afghanistan, on or about 9 November 2018, attempt to wrongfully and knowingly view the private area of Specialist (E-4) [S.N.J.], without his consent, and under circumstances in which Specialist (E-4) [S.N.J.] had a reasonable expectation of privacy." Providing evidence relevant to this specification, Specialist S.N.J. testified that on November 9, 2018, he saw a cell phone being held over the shower stall in which he was showering. Another witness identified Appellant as standing outside of the shower stall.

No witness could discern exactly what was displayed on the cell phone screen while Appellant was holding it over the shower stalls or what Appellant could see on the screen. One described the display as merely a "gray and bluish blur." Although a forensic examination of the phone did not uncover any images or videos taken in the showers, it revealed that the phone had suffered water damage.

The military judge found Appellant guilty of attempted indecent viewing. On appeal, Appellant argued that the

evidence was legally insufficient because attempting to view a visual image of a person's private area on a cell phone screen is different from attempting to view the person's private area. *Mays*, 2022 CCA LEXIS 525, at *7, 2022 WL 4232596, at *3. The ACCA rejected this argument, reasoning: "Appellant's acts facilitated the viewing of the naked individual in the shower stall through the camera lens of the cellphone, regardless of whether he was also capturing a photograph or recording, or merely using the camera and screen as a technologically advanced mirror." *Id.* at *8, 2022 WL 4232596, at *3.

We granted review of the following issue: "Whether the offense of indecent viewing under Article 120c, UCMJ, includes viewing a visual image of the private area of another person."

## II. Standards of Review

Questions about the meaning of statutes, including the meaning of the UCMJ's punitive articles, are questions of law that this Court reviews de novo. *United States v. Bennitt*, 72 M.J. 266, 268 (C.A.A.F. 2013). This Court also reviews de novo the legal sufficiency of the evidence to support a finding that an appellant is guilty of an offense. *United States v. Wilson*, 76 M.J. 4, 6 (C.A.A.F. 2017). The evidence is legally sufficient for finding an accused guilty of an offense if "any rational factfinder . . . could have found all essential elements of the offense beyond a reasonable doubt." *United States v. Nicola*, 78 M.J. 223, 226 (C.A.A.F. 2019) (citing *United States v. Webb*, 38 M.J. 62, 69 (C.M.A. 1993)). In determining whether the evidence was legally sufficient, this Court must "draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A. 1991).

## III. Discussion

Article 80(a), UCMJ, defines an "attempt to commit" an offense as "[a]n act, done with specific intent to commit [that] offense . . . amounting to more than mere preparation and tending, even though failing, to effect its commission."

Article 120c(a)(1), UCMJ, establishes the offense of "indecent viewing," by stating:

> Any person subject to this chapter who, without legal justification or lawful authorization—
>
> (1) knowingly and wrongfully views the private area of another person, without that other person's consent and under circumstances in which that other person has a reasonable expectation of privacy;
>
> . . . .
>
> is guilty of an offense under this section and shall be punished as a court-martial shall direct.

Article 120c(d)(2), UCMJ, defines "private area" as the "naked or underwear-clad genitalia, anus, buttocks, or female areola or nipple."

The Government argues that the evidence in this case was legally sufficient to establish every element of the two specifications of attempted indecent viewing. The Government asserts that Appellant did an "act with the specific intent to commit the offense of indecent viewing" when "he attempted to view in real time through the camera function on his cell phone the private area of soldiers while they showered." The Government further argues that this act "amounted to more than mere preparation" and "tended to bring about the commission of the offense of indecent viewing" because "Appellant likely would have viewed the private area of the victims" if he had not been observed or interrupted. Finally, the Government asserts that the victims did not consent to the viewing and the victims had a reasonable expectation of privacy in their shower stalls.

We agree with the Government's analysis. Drawing "every reasonable inference from the evidence of record in favor of the prosecution," *Blocker*, 32 M.J. at 284, we agree that a "rational factfinder . . . could have found all essential elements of the offense[s at issue] beyond a reasonable doubt," *Nicola*, 78 M.J. at 226, for the reasons that the Government has stated.

5

Appellant disagrees. He asserts that viewing a private area through the medium of a cell phone is not enough to violate Article 120c(a)(1), UCMJ. He reasons that a person is not viewing the object itself when a person points the camera lens of a cell phone at an object and then views the camera screen. Instead, the person is viewing a visual image of the object that the cell phone has reproduced onto its screen. Appellant contends that viewing a visual image of the private area of a person is not an offense under Article 120c(a)(1), UCMJ.

In support of this position, Appellant makes four related arguments. First, Appellant asserts that the plain language of Article 120c(a)(1), UCMJ, requires the accused to view the victim's "private area," not merely a visual image of the victim's private area. Citing a typical dictionary definition, he explains that the act of viewing is the act of "seeing or looking *at something*." (Emphasis added.) He contends that "Congress inserted private area as the object of that viewing, but specifically did not include a visual image of the private area or incorporate visual image into the definition of private area." (Emphasis omitted.)

We cannot agree with Appellant's assertion that, in ordinary English usage, an attempted viewing of an object can be accomplished only by attempting to view the object itself and not by attempting to view a contemporaneously produced visual image of the object, as Appellant did in this case. Indeed, we need not look beyond the field of military justice to find clear counterexamples that contradict Appellant's position. For instance, Rule for Courts-Martial (R.C.M.) 804(d)(2) provides: "The accused's absence [when a child accuser testifies] will be conditional upon his being able to view the witness' testimony from a remote location." In this sentence, the term "view the witness' testimony" must include viewing a contemporaneously produced video display of the testimony because directly viewing the witness's testimony would be impossible from a remote location. Other rules similarly use the term "view" in ways that must include viewing contemporaneously produced visual

images.[2] This Court also has used the term "view" in the same way in its opinions. For instance, in one opinion, the Court stated: "But for his stepdaughter's refusal to lift her shirt, [the accused] would have 'view[ed]' his stepdaughter's breasts using the webcam." *United States v. King*, 71 M.J. 50, 52 (C.A.A.F. 2012) (second alteration in original). In this sentence, the referenced viewing would be the viewing of a contemporaneously produced visual image. Other cases provide similar illustrations.[3] Given these counterexamples, we cannot accept Appellant's argument that the term "view," in ordinary usage, has the limited meaning that he asserts.

Appellant's second argument is that the "broader statutory context of Article 120c, UCMJ," supports the conclusion that viewing a visual image of an object cannot be the basis of an Article 120c(a)(1), UCMJ, violation. He observes that Article 120c(a)(2), UCMJ, makes it an offense to "photograph[], videotape[], film[], or record[]" the private area of another person. He asserts that "an interpretation of private area that implicitly included a visual image of a private area" would render Article 120c(a)(2), UCMJ, superfluous.

---

[2] *See, e.g.*, R.C.M. 405(j)(6) ("The convening authority may . . . permit contemporaneous closed-circuit video . . . transmission to permit viewing . . . by an accused removed [from the proceedings for disruptive conduct] or by spectators when the facilities are inadequate to accommodate a reasonable number of spectators."); R.C.M. 806(c) ("[T]he military judge may . . . permit contemporaneous closed-circuit video . . . transmission to permit viewing . . . by an accused removed under R.C.M. 804 or by spectators when courtroom facilities are inadequate to accommodate a reasonable number of spectators."); R.C.M. 914A(a)(3) ("Sufficient monitors shall be placed in the courtroom to allow viewing and hearing of the testimony by the military judge, the accused, the members, the court reporter, and the public.").

[3] *See, e.g.*, *United States v. Bench*, 82 M.J. 388, 394 (C.A.A.F. 2022) ("Appellant cites no precedent from any court holding that the Sixth Amendment confrontation right requires a child testifying remotely to be aware that the defendant is viewing their testimony."), *cert. denied*, 143 S. Ct. 580 (2023).

We disagree. It is true that some conduct might violate both Article 120c(a)(1) and 120c(a)(2), UCMJ, such as simultaneously viewing and recording the private area of another person. Even so, neither provision is redundant because some conduct violates either Article 120c(a)(1) *or* 120c(a)(2), but not both. For example, viewing but not recording a private area violates Article 120c(a)(1), UCMJ, but not Article 120c(a)(2), UCMJ, while recording a private area without viewing either the private area or a contemporaneously produced visual image of the private area violates Articles 120c(a)(2), UCMJ, but not Article 120c(a)(1), UCMJ.

Third, Appellant argues that the Government's position is inconsistent with the overall statutory scheme of the UCMJ. He notes that in Article 117a(b)(3), UCMJ, 10 U.S.C. § 917a(b)(3) (2018), Congress specifically defined the term "intimate visual image" as " 'a visual image that depicts a private area of a person.' " In Appellant's view, "Congress's inclusion of a separate definition of *intimate visual image* in Article 117a, UCMJ, demonstrates that Congress identifies a cognizable difference between the private area and a visual image of the private area." As further evidence that Congress has identified this difference, Appellant points to Article 120b(c), UCMJ, 10 U.S.C. § 920b(c) which expressly prohibits exposing one's private area to a child "by any means, including via communication technology." Article 120b(c), (h)(5)(B), UCMJ.

We acknowledge that a distinction can be drawn between the private area of a person and a visual image of the private area of person. But that is not the question in this case. The question in this case is whether the meaning of the term "viewing" in Article 120c(a)(1), UCMJ, is broad enough to cover both viewing the private area and viewing a contemporaneously produced visual image of the private area of a person. For the reasons explained above, we have concluded that it is.

Finally, Appellant argues that he should prevail under the rule of lenity. The rule of lenity generally holds that "criminal statutes are to be strictly construed, and any

ambiguity resolved in favor of the accused." *United States v. Thomas*, 65 M.J. 132, 135 n.2 (C.A.A.F. 2007). Appellant contends that because it is not clear that Congress intended to include the viewing of a visual image, this Court should resolve the issue in his favor.

We find the rule of lenity inapplicable in this case. The Supreme Court has explained that the rule of lenity applies only in cases of significant ambiguity, stating:

> The simple existence of some statutory ambiguity, however, is not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree. *Cf. Smith*, [508 U.S. 223, 239 (1993)] ("The mere possibility of articulating a narrower construction . . . does not by itself make the rule of lenity applicable"). " 'The rule of lenity applies only if, "after seizing everything from which aid can be derived," . . . we can make "no more than a guess as to what Congress intended." ' " *United States v. Wells*, 519 U.S. 482, 499 (1997) (quoting *Reno v. Koray*, 515 U.S. 50, 65 (1995), in turn quoting *Smith*, *supra*, at 239, and *Ladner v. United States*, 358 U.S. 169, 178 (1958)). To invoke the rule, we must conclude that there is a " ' "grievous ambiguity or uncertainty" ' " in the statute." *Staples v. United States*, 511 U.S. 600, 619, n. 17 (1994) (quoting *Chapman v. United States*, 500 U.S. 453, 463 (1991)).

*Muscarello v. United States*, 524 U.S. 125, 138-39 (1998) (second and third alterations in original). For the reasons explained above, we see no substantial ambiguity about whether an accused can violate Article 120c(a)(1), UCMJ, by viewing a contemporaneously produced visual image of the private area of a person.

One last point requires attention. Although we hold that the evidence was legally sufficient for the military judge to find Appellant guilty of the two specifications of attempted indecent viewing in this case, we do not hold or imply that any viewing of images of another person's private parts violates Article 120c(a)(1), UCMJ. We leave the question of whether Article 120c(a)(1), UCMJ, prohibits

viewing a visual image that is not contemporaneously produced for another case.

## IV. Conclusion

The decision of the United States Army Court of Criminal Appeals is affirmed.